Submitted on remand April 16, affirmed May 31, 2012

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

MINH H. NGUYEN,
aka Minh Huong Nguyen,
aka Minh Hong Nguyen, Jr.,
*Defendant-Appellant.*

Multnomah County Circuit Court
080342699; A138986

279 P3d 831

Peter Gartlan, Chief Defender, and Jedediah Peterson, Deputy Public Defender, Office of Public Defense Services, for appellant.

John R. Kroger, Attorney General, Jerome Lidz, Solicitor General, and Jeremy C. Rice, Assistant Attorney General, for respondent.

Before Ortega, Presiding Judge, and Haselton, Chief Judge, and Schuman, Judge.

ORTEGA, P. J.

**ORTEGA, P. J.**

This case is before us on remand from the Oregon Supreme Court, which vacated our prior decision and remanded for reconsideration in light of *State v. Ryan*, 350 Or 670, 261 P3d 1189 (2011) (*Ryan II*). The first time this case came before us, we concluded that the trial court erred in denying defendant's motion for a judgment of acquittal and, accordingly, reversed defendant's convictions for violating a stalking protective order (SPO), ORS 163.750.[1] On remand, we affirm.

We take the facts and pertinent procedural history from our earlier opinion in this case:

> "The victim in this case sought and obtained an SPO that prohibited defendant from having any contact with the victim, including sending written or electronic messages. Despite that order, over a four-day period, defendant sent the victim several text messages, exemplified by the following two messages:
>
>> " 'U want me 2 pay child support? Fuk u! So u can use my muny 2 fuk sum one else! Fuk u! *I give you something bitch*!
>>
>> " 'And u want to better myself? But u want to fuk me? Ok! *C u soon!*' "

*State v. Nguyen*, 238 Or App 715, 717, 243 P3d 820 (2010), *vac'd and rem'd*, 351 Or 675, 276 P3d 1123 (2012) (emphasis in original). Based on those two messages and the others, defendant was charged with 12 counts of violating the SPO.

---

[1] ORS 163.750 provides:

"(1) A persons commits the crime of violating a court's stalking protective order when:

. "(a) The person has been served with a court's stalking protective order as provided in ORS 30.866 or 163.738 or if further service was waived under ORS 163.741 because the person appeared before the court;

"(b) The person, subsequent to the service of the order, has engaged intentionally, knowingly or recklessly in conduct prohibited by the order; and

"(c) If the conduct is prohibited contact as defined in ORS 163.730(3)(d), (e), (f), (h) or (i), the subsequent conduct has created reasonable apprehension regarding the personal safety of a person protected by the order."

"Defendant moved for a judgment of acquittal on all charges, arguing that his messages to the victim were protected speech under Article I, section 8, of the Oregon Constitution as interpreted in *State v. Rangel*, 328 Or 294, 977 P2d 379 (1999). The state took the position that, after the issuance of an SPO, 'the state is entitled to restrict a person's constitutional rights in an effort to protect society.' The trial court denied defendant's motions. The court explained that,

" '[w]here there have been predicate circumstances that authorize a court to issue a protective stalking order, once that threshold is reached, then the court has the power to restrict a defendant's communications with the victim * * * and to restrict it beyond just threats that would meet the *Rangel* standard, to restrict it and to punish it with a crime[.]'

"The case was submitted to the jury, and defendant was convicted on Counts 3 and 6, which were based on the above-quoted text messages."

*Id.* at 717-18 (brackets and omission in original).

Defendant asserts that the trial court erred in denying his motion for a judgment of acquittal because the contacts on which his convictions are based were constitutionally protected speech under Article I, section 8, as interpreted in *Rangel*. The state asserts that *Rangel* does not apply to "[d]efendant's violation of a pre-existing stalking protective order." (Emphasis omitted.)

In our original opinion, in reliance on this court's decision in *State v. Ryan*, 237 Or App 317, 239 P3d 1016 (2010) (*Ryan I*), we stated that "the *Rangel* analysis applies to prosecutions for violation of a stalking protective order," and concluded that the contacts at issue in this case "did not express an unequivocal intent to carry out a threat that instilled a fear of imminent and serious personal violence" as required by *Rangel*. *Nguyen*, 238 Or App at 718-19 (internal quotation marks omitted).

In *Ryan II*, the Oregon Supreme Court reversed our decision in *Ryan I*. It addressed "the extent to which the free speech rights analysis of *Rangel* may apply to the crime of

violating a stalking protective order." *Ryan II*, 350 Or at 675. In looking at that question, the court observed:

> " 'An overbroad statute is one that proscribes speech or conduct that the constitution protects.' *Rangel*, 328 Or at 299 (citation omitted). The crime at issue here, ORS 163.750, applies only to those communications already prohibited by a stalking protective order. (In fact, it only applies to a subset of those prohibited communications— those that create a 'reasonable apprehension regarding the personal safety of a person protected by the order.') The statute does not apply to any communications not already prohibited by a stalking protective order."

*Id.* at 682. Given that the statute does not reach any speech not already prohibited by a stalking protective order, the court concluded that "a defendant who seeks to challenge a conviction under ORS 163.750 on free speech grounds first must successfully attack the underlying stalking protective order." *Id.* at 683. Because the defendant had not done so in that case, the court concluded that the trial court correctly denied the defendant's motion for a judgment of acquittal.

In light of the court's analysis in *Ryan II*, the result in this case is clear. As in *Ryan II*, defendant in this case did not bring a successful challenge to the underlying stalking protective order. Accordingly, he cannot challenge his conviction pursuant to ORS 163.750 on free speech grounds, and the trial court did not err in denying his motion for a judgment of acquittal.[2]

Affirmed.

---

[2] In a third assignment of error, defendant asserts that the trial court should have instructed the jury that, to convict him, it was required, in light of *Rangel*, to "find that defendant expressed the intent to carry out a threat and had the ability to do so." That argument is also disposed of by the court's decision in *Ryan II*. *See* 350 Or at 683 n 10 (disposing of similar assignment of error). Accordingly, we reject that assignment without further discussion.